That the defendant has collected in costs since his election, in cases for the violation of the statutes of the state of Ohio, prosecuted in the mayor’s court of said city, the sum of $141.60, and has also received from the Commissioners of Miami County, under the authority of Section 1309 of the Revised Statutes of Ohio, the sum of $50, all of which he has refused to pay into the city treasury, though requested to do so. Judgment is therefore asked against the defendant for said sums, aggregating $191.60.
To this petition the defendant interposes a general demurrer.
The only reported Ohio cases which I have been able to find, *166 in which a controversy even distantly approaching that before the court has been determined, are Hatch v. Cincinnati, 17th Ohio St., 48; Gibson v. Zanesville, 31st Ohio St., 184, and Deatrick v. Defiance, 1st Ohio Circuit Rep., 340. None of these cases throw any light on that before us, as they all are concerned entirely with the disposition of fees and costs accruing under ordinance eases or from city licenses. No complaint is made here that the mayor has failed to turn over any money received from such sources, the only questions here presented being as to whether the city can require the mayor to turn into the treasury the costs which would otherwise belong to him in state eases, and whether the ordinance in question does so require him to do.
If the ordinance or this part of it is repugnant to and in conflict with the statute law of the state, it is of course invalid, at least in so far as such repugnancy and conflict exist. The presumption is that the council did not intend to enact any provision in conflict with the superior authority of the statute, and it is the duty of the court, if possible, to give the ordinance such construction as will harmonize it with the statute.
The mayor is primarily a municipal executive officer; by Section 1536-773 of the new Municipal Code he is “a conservator of the peace throughout the corporation.” It is especially his duty to see that the ordinances of the city are observed; and in the discharge of that duty he sits as a magistrate to hear and determine complaints as to alleged violations of such ordinances. As is said in 19th Am. & Eng. Enc. of Law (1st Ed.), page 554:
“Every municipal corporation is provided with an executive head, usually styled the mayor, whose duty usually is to see that municipal ordinances are executed, and to preside at corporate meetings. Judicial duties are often annexed to those which properly appertain to the office, however, and he is authorized to judicially administer not only the ordinances of the corporation, but also the laws of the states.”
In Ohio, the Legislature has seen fit, not only to invest the mayor with varied powers to be exercised in connection with strictly municipal matters, but has clothed him, ex-officio, with a considerable degree of jurisdicton and authority in matters entirely non-municipal, including judicial functions in purely state cases, and in other affairs, judicial or otherwise, which *167 are not subjects of municipal concern. The validity of such legislation, giving him jurisdiction in cases wholly disconnected with municipal affairs, has been distinctly upheld by our Supreme Court, in the ease of Steamboat Northern Indiana v. Millihen, 7th Ohio St., 384.
By what is now Revised Statutes, Section 1536-773, he is given all the jurisdiction and powers of a justice of the peace, in civil matters, within the limits of the .corporation.
In Miller v. Oehler, 36th Ohio St., 624, the Supreme Court held that this legislation gave him jurisdiction in bastardy proceedings.
By Revised Statutes, Section 1536-777, he is given final jurisdiction in misdemeanor cases (where the right to trial by jury does not exist) eo-extensive with the county.
By Revised Statutes, Section 1536-781, he may impannel a jury in prosecution for misdemeanors under state laws and try the ease as is done in the court of common pleas on indictment.
By Revised Statutes, Section 1536-783, he has jurisdiction in felony eases, co-extensive with the county.
By Revised Statutes, /Sections 306a, 3718a, 6960 to 6968-5, he has jurisdiction in regard to offenses committed as to the state regulation of oils; under the game laws, and in regard to pure food, and in eases of cruelty to children and animals.
Ex-officio he may solemnize marriages. He has by the same authority practically the same powers as a notary public — he may swear parties to affidavits, take depositions, and take the acknowledgment of deeds and mortgages.
None of these matters have any connection with municipal affairs, and they may mostly originate outside of and distant from the municipality of which he is an officer.
He can of course receive the ordinary compensation for work of a notarial nature, and the law provides for his costs in judicial matters.
In felonies where there is a conviction, under Revised Statutes, Section 1306, the county pays him his costs, and is afterwards re-paid by the state. In case of failure to convict, the county commissioners may make him a certain allowance for his costs under Revised Statutes, Section 1309. Such allowance is part of the sum sought to be recovered from him in this case.
*168 When performing services similar to those of a justice of the peace under Revised Statutes, Section 1536-774, he is entitled to receive the same fees that are paid that officer.
If he did not hold the office of mayor, he of course could not perform these duties, and would consequently receive no fees for them. On the other hand, these duties having nothing to do with municipal affairs — the city has no interest in them, and in no way is liable for any cost or expense connected with them. If outside of his municipal duties the mayor performs services for the state of Ohio, or for some of its citizens, there seems no special reason why the city should be entitled to appropriate the compensation he receives for such extra-municipal service. If it may take from him the costs that the state pays him for attending to its criminal business, why not also demand his fees in civil cases, and the money that private citizens may pay him for taking depositions or writing deeds ?
Does the statute give these earnings of his to the city? The new Municipal Code provides in Section 1536-633 that “except as otherwise provided in this act, all fees pertaining to any office shall be paid into the city treasury. ’ ’ It therefore appears that there are exceptions to the rule. But for this exception it would seem, that, whether justly or not, under the statute, the city would be entitled to appropriate any money received by the mayor officially, whether earned in connection with municipal business or not. When we come to look for the exception, it would seem to appear plainly in Revised Statutes, Section 1536-774, and nowhere else. That section provides that the mayor “shall be entitled to receive the same fees that are, or may be allowed justices of the peace for similar services.” I am unable to find any other provision that answers to the exception referred to in Revised Statutes, Section 1536-633.
Section 3 of the city ordinance in question provides not only that “all fees, moneys and perquisites,” but “all fines and penalties” received by the city officers shall be paid into the city treasury. But fines and penalties in state cases, collected by the mayor, he is expressly required by Revised Statutes, Section 1536-643, to pay into the county treasury, and of course the council would' have no right to, and did not intend by its ordi *169 nance to claim money -which the statute says belongs to the county. Such a literal construction of the ordinance would make it conflict with the statute and invalidate it, but by giving it a reasonable construction, it may remain a valid enactment. It will be observed also that the same statute requires the mayor to turn over to the city treasury, “all moneys which may be received by him in his official capacity, other than his fees of office.” Construing together with this Section 1536-633, which requires him to turn over all fees, “except as otherwise provided,” and Section 1536-774 which declares him “entitled to receive the same fees allowed a justice of the peace,” and there is no difficulty in harmonizing the three, which were passed at the same time, and are of equal authority. They evidently mean, as seems just and right, that for services, judicial or otherwise, performed by the mayor, for the municipality, he must be satisfied with his salary without additional costs, and that the city gets the benefit of the fees and costs accruing in the transaction of municipal business. But as to fees and costs earned by the mayor, while transacting, not the business of the city of Piqua, but of the state of Ohio, or of its private citizens, the law, at present at least, does not give them to the city. The ordinance therefore can not be held -to require the mayor to turn over to the city, either fines or penalties, or fees and costs which the statute says belong to others, and neither under ordinance nor statute can there be a recovery on the facts set forth in the petition.
J. G. Hughes, City Solicitor, and George W. Barry, for plaintiff.
James Ward Keyt, for defendant.
The demurrer will therefore be sustained.